# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Hockey Enterprises, Inc.;                    Civil No. 10-2943 (DWF/JSM)
and Mathieu Comeau,

                Plaintiffs,

v.                                           **MEMORANDUM**
                                             **OPINION AND ORDER**

Total Hockey Worldwide, LLC;
Total Hockey Products and Services,
LLC (d/b/a Total Hockey Training
Systems); Peter Ing; Dean Talafous;
Rob Talafous; Brian McKinney;
and Bryce Salvador;

                Defendants.

_____

J. Mark Dady, Esq., J. Michael Dady, Esq., and Kristy L. Zastrow, Esq., Dady &
Gardner, PA, counsel for Plaintiffs.

Karla M. Vehrs, Esq., and Mark A. Jacobson, Esq., Lindquist & Vennum PLLP, counsel
for Defendants Total Hockey Products and Services, LLC, Total Hockey Worldwide,
LLC, Peter Ing, Brian McKinney, and Bruce Salvador.

Barry A. O'Neil, Esq., and Nicholas Dolejsi, Esq., Lommen, Abdo, Cole, King &
Stageberg, PA, counsel for Defendant Dean Talafous.

Terrance W. Moore, Esq., Steingart, McGrath & Moore PA, counsel for Defendant Rob
Talafous.

_____

## INTRODUCTION

      This matter is before the Court on a Motion to Dismiss brought by Defendants

Total Hockey Worldwide, LLC; Total Hockey Products and Services, LLC ("Total

Hockey Products"); Peter Ing; Brian McKinney, and Bryce Salvador (together, the

"Total Hockey Defendants"); a Motion to Dismiss brought by Rob Talafous; and a Motion to Dismiss brought by Dean Talafous. For the reasons set forth below, the Court grants in part and denies in part the motions.

## BACKGROUND

Plaintiff Hockey Enterprises, Inc. ("HEI") is a Florida corporation doing business in Florida. (First Am. Compl. ¶ 2.) Plaintiff Mathieu Comeau is the owner/guarantor of HEI. (*Id.* ¶ 3.) Comeau is also a resident and citizen of Florida.

Total Hockey Worldwide and Total Hockey Products are Minnesota limited liability companies. (*Id.* ¶¶ 4, 5.) Total Hockey Worldwide is a franchisor that markets and sells a business concept for operating hockey-training franchises. (*Id.* ¶¶ 5, 16.) Total Hockey Products is in the business of licensing hockey training protocols, procedures, and standards, and selling hockey training equipment. (*Id.* ¶ 4.) Total Hockey Products is the sole owner of Total Hockey Worldwide. (*Id.*) Together, Total Hockey Worldwide and Total Hockey Products are referred to as "Total Hockey."

Defendant Peter Ing is the Chief Executive Officer of Total Hockey Worldwide. (*Id.* ¶ 6.) Defendant Dean Talafous is the President and Chief Executive Manager of Total Hockey Worldwide. (*Id.* ¶ 7.) Defendant Rob Talafous is the Vice President and Secretary of Total Hockey Worldwide. (*Id.* ¶ 8.) Defendant Bob McKinney is Vice President of Total Hockey Worldwide. (*Id.* ¶ 9.) Defendant Bryce Salvador is Vice President of Total Hockey Worldwide. (*Id.* ¶ 10.)

Plaintiffs allege that Comeau saw a magazine advertisement for Total Hockey in January 2007 and that the advertisement sparked an interest that led Plaintiffs to Total

Hockey's website.  (*Id.* ¶¶ 15-16.)  Plaintiffs allege that the Total Hockey website represented that Total Hockey would "provide[] the equipment, technology, materials, training, protocols and experience to successfully launch an independent, profitable, hockey-related business" and that Total Hockey would provide a "business plan with year-round profitability."  (*Id.* ¶ 16.)

After viewing the website, Comeau contacted Rob Talafous to discuss the Total Hockey business opportunity.  Comeau expressed that he was concerned about his own lack of hockey experience, and he alleges that Dean Talafous expressed that he shared his concern.  (*Id.* ¶17.)  Comeau then found Denis Potvin, an NHL Hall of Famer, to help run Comeau's facility for a salary, and both Dean and Rob Talafous told Comeau that he could operate a successful Total Hockey franchise if he partnered with or hired someone with a strong hockey background.  (*Id.* ¶ 18.)

Plaintiffs allege that as part of their due diligence, Comeau asked Total Hockey several specific questions, including:  "What will I get when I buy into this business opportunity"; "What is my gross revenue going to be?"; and "What are Total Hockey's plans for the future, long term?"  (*Id.* ¶ 19.)  Plaintiffs assert that Total Hockey answered these questions with the representations detailed below.

For example, Comeau received an e-mail from Rob Talafous on or around March 28, 2007, with a Revenue and Expense Projection Worksheet (the "Projection Worksheet") attached.  The Projection Worksheet included financial projections based on seasons and included a total annual revenue estimate of $437,000 and an annual

profit estimate of $139,600.  (*Id*. ¶ 27, Ex. A.)  The Projection Worksheet also contained the following information:

> *Disclaimer.*  This is a projection template and does not guarantee the results projected on this worksheet.  ***Plug in projected number of players or team sessions and anticipated rates.  Use hourly ice time rental rates for guide in pricing team training and build individual training rates from there.***

(*Id*.)  Plaintiffs allege that despite the disclaimer, the Projection Worksheet constitutes a false earnings claim.

Plaintiffs allege that Total Hockey informed Comeau that he would receive a profitable and proven business model from Total Hockey that would provide Comeau with the tools needed to run a successful franchise.  (*Id*. ¶ 20.)  Plaintiffs further allege that Total Hockey told Comeau that Total Hockey was expanding in North America and that the expansion would increase brand recognition.  (*Id*.)

Comeau traveled to Minnesota in or around April 2007.  During this trip, Comeau met with Rob Talafous, Dean Talafous, and Brian McKinney.  Comeau also toured the Talafous' and McKinney's hockey training facilities, as well as the facility associated with the late Herb Brooks, coach of the 1980 U.S. Olympic gold medal team.  (*Id*. ¶ 21.)  During the visit, Plaintiffs allege that Comeau inquired about the financial status of these and three other Total Hockey facilities and that Rob Talafous, Dean Talafous, and Brian McKinney told Comeau that the facilities were successful and profitable.  (*Id*. ¶ 22.)  Further, Plaintiffs allege that Dean Talafous stated that his facility was doing well and that it had just generated $175,000 in revenue through summer camp registrations alone.  (*Id*. ¶ 23.)

After his visit to Minnesota, Comeau began looking for a potential location for a training facility in Florida.  Plaintiffs allege that while Defendants suggested that an ideal training facility would be near or inside a rink or available ice, Defendants never told Comeau that such a location was vital to the profitability of the center.  (*Id.* ¶ 25.)

On or about July 27, 2007, Total Hockey provided Comeau with a Uniform Franchise Offering Circular ("UFOC").  (*Id.* ¶ 26, Ex. C.)  The UFOC contained the following language:

> We do not furnish or authorize any salesperson to furnish any oral or written information concerning the actual or potential sales, costs, income, or profits of a Total Hockey™ franchise.  Actual results vary from unit to unit and we cannot estimate the results of any particular franchise.  We have not suggested, and certainly cannot guarantee, that you will succeed in the operation of your Training Center, because the most important factors in the success of any Training Center, including the one to be operated by you, are your personal business acumen, marketing, management, judgment and other skills and your willingness to work hard and follow the System.

> WE DO NOT MAKE ANY PROMISES OR REPRESENTATION OF ANY KIND THAT YOU WILL ACHIEVE ANY PARTICULAR RESULTS OR LEVEL OF SALES OR PROFITABILITY OR EVEN ACHIEVE BREAK-EVEN RESULTS IN ANY PARTICULAR YEAR OF OPERATIONS.  THE PROFITABILITY OF ANY INDIVIDUAL TRAINING CENTER DEPENDS ON A NUMBER OF FACTORS THAT MAY VARY DUE TO INDIVIDUAL CHARACTERISTICS OF THE FRANCHISED BUSINESS.

> YOU ARE RESPONSIBLE FOR DEVELOPING YOUR OWN BUSINESS PLAN FOR YOUR TRAINING CENTER INCLUDING CAPITAL BUDGETS, FINANCIAL STATEMENTS, PROJECTIONS AND OTHER ELEMENTS APPROPRIATE TO YOUR PARTICULAR CIRCUMSTANCES. WE ENCOURAGE YOU TO CONSULT WITH YOUR OWN ACCOUNTING, BUSINESS, AND LEGAL ADVISORS TO ASSIST YOU TO IDENTIFY THE EXPENSES YOU LIKELY WILL INCUR IN CONNECTION WITH YOUR TRAINING CENTER, TO PREPARE YOUR BUDGET, AND TO ASSESS THE LIKELY OR

POTENTIAL FINANCIAL PERFORMANCE OF YOUR TRAINING CENTER.

IN DEVELOPING THE BUSINESS PLAN FOR YOUR TRAINING CENTER, YOU ARE CAUTIONED TO MAKE NECESSARY ALLOWANCE FOR CHANGES IN FINANCIAL RESULTS TO INCOME, EXPENSES, OR BOTH, THAT MAY RESULT FROM OPERATION FO YOUR TRAINING CENTER DURING PERIOD OF, OR IN GEOGRAPHIC AREAS SUFFERING FROM, ECONOMIC DOWNTURNS, INFLATION, UNEMPLOYMENT OR OTHER NEGATIVE ECONOMIC INFLUENCES.

(*Id.* ¶ 26, Ex. C at Item 19.)  Plaintiffs also filled out a Franchise Questionnaire.[1]

On July 13, 2007, HEI and Total Hockey entered into two franchise agreements, one for an East Florida location and the other for a West Florida location.  (*Id.* ¶ 30, Exs. D & E.)  Pursuant to those agreements, HEI was granted rights to open two Total Hockey franchises in Florida.  (*Id.* ¶ 30.)  Both agreements provide, in part:

BACKGROUND:  D. You have had an adequate opportunity to be thoroughly advised of the provisions of this Agreement and have had sufficient time and opportunity to evaluate and investigate the TOTAL HOCKEY system and the procedures and financial requirements associated with this system as well as the competitive market in which it operates. . . .

6.A.    <u>Facilities</u>.  You are responsible for purchasing or leasing a site that meets our site selection criteria.  Our approval of the location (or construction) of your site does not constitute a representation, a guaranty or warranty, express or implied, assurance or endorsement of the successful operation, profitability, safety and/or legal compliance of the Training Center operated at such location, and you alone are responsible for site selection and the ultimate operation and success of the Training Center.

---

[1]     The Court can consider the questionnaire as necessarily embraced by the pleadings or matters mentioned or incorporated therein.  *See Henke v. Allina Health Sys.*, 698 F. Supp. 2d 1115, 1121 (D. Minn. 2001.)

. . .

> 16E.   <u>Integration /Waiver</u> . . . This Agreement, together with its
> Appendices constitute the entire agreement between the parties regarding
> the subject matter of this Agreement and embody and supersede all prior
> agreements and negotiations regarding this subject matter.  . . . All of the
> representations and warranties of each party regarding the subject matter
> of this Agreement are set forth in this Agreement.  You acknowledge and
> agree that you have not received any warranty or guarantee, express or
> implied, as to the potential volume, profits or success of your business.
> Each party acknowledges and agrees that it has not been induced to enter
> into this Agreement by, and has not in any way relied upon, any
> representation or warranty, written or oral, express or implied, of the other
> party except as expressly stated in this Agreement.

(*Id*. ¶ 30, Exs. D & E.)

After purchasing but before opening the franchises, Comeau attended a Total Hockey certification training.  At this training, Plaintiffs claim that Comeau was told by Bryce Salvador that if Comeau followed Total Hockey's procedures, he would succeed and be profitable.  Plaintiffs further allege that at that time Bryce Salvador did not inform Comeau that Total Hockey did *not* have an established and proven business model for profitability.  (*Id*. ¶ 31.)

In March 2008, Plaintiffs found the location for their East Florida location. (*Id*. ¶ 32.)  The monthly rent was $8,000.  (*Id*.)  Comeau discussed the space and rent with Dean Talafous prior to signing the lease.  Dean Talafous did not indicate that he thought the rent was too high or an impediment to Comeau's ability to operate a profitable franchise.  (*Id*.)

The East Florida location opened in January 2009 but was closed in February 2010.  (*Id*. ¶ 33.)  Plaintiffs never opened the West Florida franchise.  (*Id*.)  Plaintiffs

contend that after signing the Franchise Agreements, and losing over $800,000, they discovered that Defendants made several false representations. Specifically, Plaintiffs contend that contrary to what they had been told by Total Hockey and/or its representatives, they learned that: (1) HEI did not generate anywhere close to the $400,000 in gross sales that Total Hockey represented it could; (2) it *was* imperative that the facility be located in or near a rink; (3) when Comeau visited Minnesota, it was highly unlikely that all of the Total Hockey facilities were financially successful; (4) in order to operate at a profit, the owner of the facility would need to have significant hockey experience; and (5) Total Hockey did not experience the growth as represented and that Total Hockey did not have an established business plan for running hockey facilities. (*Id.* ¶ 34.)

Plaintiffs filed this action on July 7, 2010, and a First Amended Complaint on August 13, 2010. Plaintiffs allege that the Defendants used false and misleading information to induce them to enter into the two franchise agreements. In their First Amended Complaint, Plaintiffs assert claims for violations of the Minnesota Franchise Act ("MFA") (Counts I and II); a violation under the Florida Franchise Act ("FFA") (Count III); fraud (Count IV); negligent misrepresentation (Count V); and breach of contract and the covenant of good faith and fair dealing (Count VI). At the heart of Plaintiffs' claims is the allegation that Defendants made false and misleading representations that induced Plaintiffs into opening Total Hockey franchises. As a result of those representations, Plaintiffs assert that they have suffered damages in excess of $822,000. (*Id.* ¶ 35.)

Total Hockey Defendants, Dean Talafous and Rob Talafous all move to dismiss Plaintiffs' claims. Rob and Dean Talafous each submit separate motions to dismiss, but join or incorporate by reference the memorandum of law submitted by Total Hockey Defendants. The Court's analysis applies to all of the pending motions.

## DISCUSSION

### I.      Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 579 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court

recently reiterated, "[t]he threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II.   Minnesota Franchise Act

Counts I and II of Plaintiffs' First Amended Complaint assert violations of the MFA. In Count I, Plaintiffs allege that Defendants violated the MFA by making material misrepresentations and providing illegal earnings claims in order to induce Plaintiffs into becoming a Total Hockey franchisee. In Count II, Plaintiffs assert that Defendants violated the MFA by failing to register with the State of Minnesota prior to selling Plaintiffs a franchise.

Defendants assert that Plaintiffs' MFA claims must be dismissed as a matter of law because the parties explicitly chose Florida law to govern their relationship. The Franchise Agreements both state:

> Applicable Law and Waiver. . . . [T]he parties' rights under this Agreement, and the relationship between the parties is governed by, and will be interpreted in accordance with, the laws (statutory and otherwise) of the state in which the Franchised Location is located. You waive, to the fullest extent permitted by law, the rights and protections that might be provided through the laws of any state relating to franchises or business opportunities, other than those of the state in which the Franchised Location is located.

(*Id.* ¶ 30, Exs. D & E at 15A.) Here, both of the "Franchised Locations" were in Florida.

Plaintiffs assert that despite the contractual language designating Florida law, Defendants are still liable for violations under the MFA because Minnesota law does not allow for the waiver of any rights secured by the MFA.

The relevant Minnesota law is Minn. Stat. § 80C.21, which provides:[2]

**80C.21 Waivers void**
Any condition, stipulation or provision, including any choice of law provision, purporting to bind *any person who, at the time of acquiring a franchise is a resident of this state*, or, in the case of *a partnership or corporation, organized or incorporated under the laws of this state*, or purporting to bind *a person acquiring any franchise to be operated in this state* to waive compliance or which has the effect of waiving compliance with any provision of sections 80C.01 to 80C.22 or any rule or order thereunder is void.

Minn. Stat. § 80C.21 (emphasis added). The plain language of Minn. Stat. § 80C.21 prohibits the waiver of rights secured by the MFA through a choice-of-law provision *if* the waiver purports to bind a person who is a Minnesota resident (or a corporation incorporated under Minnesota law) at the time that person/organization acquired a franchise *or* a person (regardless of residence) who is acquiring a franchise that will operate in Minnesota. Here, Comeau is not a resident of Minnesota, HEI is not organized or incorporated in Minnesota, and HEI's franchises were to be operated in

---

[2]     In their opposition papers, Plaintiffs cite to Minn. R. 2860.4400, which provides in part that "it shall be unfair and inequitable" to require a franchisee to assent to a waiver that would relieve a person from liability under the MFA. Minn. R. 2860.4400(D). This regulation, however, does not have the effect of law to the extent that this regulation is inconsistent with Minn. Stat. § 80C.21. *See Vang v. Comm'r of Public Safety*, 432 N.W.2d 203, 206 (Minn. Ct. App. 1988).

Florida not Minnesota. Therefore, Minn. Stat. § 80C.21 does not operate to void the parties' choice of law provision.

The Court's ruling is consistent with the history of and case law interpreting Minn. Stat. § 80C.21. The Minnesota legislature amended § 80C.21 in response to the Eighth Circuit's decision in *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc*., 871 F.2d 734, 738-40 (8th Cir. 1989). The dispute in *Modern Computer* involved a Nebraska company that gave another company the exclusive rights to sell software in the state of Minnesota. *Id*. at 735. The parties' agreement contained a choice-of-law provision designating Nebraska law. *Id*. The Eighth Circuit upheld the choice-of-law clause selecting Nebraska law and precluded application of the MFA, despite the policy and non-waiver provision of Minn. Stat. § 80C.21.[3] *Id*. at 739-40. The Eighth Circuit in *Modern Computer* recognized that a fundamental policy of Minnesota (and the MFA) is to protect Minnesota franchisees, but held that the choice-of-law overrode that policy. *Id*. at 739.

The Minnesota legislature thereafter amended Minn. Stat. § 80C.21 to explicitly prevent circumventing the MFA through choice-of-law provisions. *See, e.g.*, *Healy v.*

---

[3]    At that time, Minn. Stat. § 80C.21 read:

Any condition, stipulation or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of sections 80C.01 to 80C.22 or any rule or order thereunder is void.

*Id*. 871 F.2d at 739.

*Carlson Travel Network Assocs.*, 227 F. Supp. 2d 1080, 1085 (D. Minn. 2002)

(explaining history of Minn. Stat. § 80C.21); *DeLaria v. KFC Corp*., No. Civ. 4-94-116,

1995 WL 17079305, at *5 (D. Minn. Jan. 13, 1995) (noting that amendment was in

response to the *Modern Computer* decision). Since the amendment to Minn. Stat.

§ 80C.21, the MFA non-waiver provision has been held to override contractual

choice-of-law provisions. However, where § 80C.21 has been held to do so, at least so

far as the Court has found, the cases involve Minnesota franchisees (a franchisee who is

a Minnesota resident or who operates a franchise in the state). *See, e.g.*, *Days Inn

Worldwide, Inc. v. SBSB, LLC*, 2010 WL 3546958, at *3 (D. Minn. Sept. 7, 2010)

(explaining that the MFA voids choice-of-law provisions in franchise agreements in

which a Minnesota franchisee is involved).

      While the Court agrees with Plaintiffs' proposition that Minn. Stat. § 80C.21 is to

be construed broadly, it is also construed in favor of protecting Minnesota franchisees.

*See Twin Cities Galleries, LLC v. Media Arts Group, Inc.*, 415 F. Supp. 2d 967, 975 (D.

Minn. 2006), *rev'd on other grounds* in 476 F.3d 598 (8th Cir. 2007) ("[T]he court finds

that the laws and legal precedent of the state of Minnesota affirmatively establish an

explicit, well-defined and dominant public policy to protect Minnesota franchisees.").

Plaintiffs have provided no relevant support for the notion that the statute is intended or

has been held to extend to non-Minnesota franchisees that do not operate in Minnesota.

Accordingly, the Court concludes that the parties' choice-of-law provision is not void

under Minnesota law and that the MFA does not apply to Plaintiffs' claims. Thus, the

Court dismisses Counts I and II of Plaintiffs' First Amended Complaint.

## III. Fraud and Negligent Misrepresentation

In Counts IV and V of the First Amended Complaint, Plaintiffs assert claims for fraud and negligent misrepresentation. These claims are based on the following alleged representations: (1) the suggestion in the Projection Worksheet that Plaintiffs could generate $400,000 in annual revenue; (2) that it was *not* imperative for the facility to be located in or very near an ice rink; (3) that Total Hockey's other facilities were financially successful; (4) that it was not necessary for Comeau to have significant hockey experience; and (5) that Total Hockey had been experiencing growth; and (6) that Total Hockey had an established business plan for running hockey facilities. (*Id.* ¶ 34.)[4]

Plaintiffs allege that they have since learned that their annual gross revenue was $80,000 and that they operated at a loss of over $200,000; that it was imperative to be located in or near an ice rink; that several of Total Hockey's other facilities were not financially successful at the time Comeau visited Minnesota in April 2007; that it was necessary for Comeau to have significant hockey experience to operate at a profit; and that while Total Hockey experienced some growth in the number of franchises opened, a

---

[4]     Plaintiffs also assert that Defendants made several material omissions by failing to inform Plaintiffs that (1) a number of Total Hockey facilities were in financial trouble or failing; (2) that it was imperative to locate the facility in or very near an ice rink; (3) that Comeau needed to have significant hockey experience in order to be profitable; and (4) that the financial projections presented to Plaintiffs were unrealistic.

significant number of facilities have closed, including Rob Talafous' and Bryce Salvador's facilities.

Defendants assert that Plaintiffs' fraud and misrepresentation claims fail to state a claim because the alleged misrepresentations are specifically addressed and contradicted by the terms of the parties' Franchise Agreements. Further, Defendants assert that in light of the language of the Franchise Agreements, the UFOC, and the franchise questionnaire, Plaintiffs could not have justifiably relied on the alleged misrepresentations that contradict those claims.[5] Specifically, Defendants cite to the portions of the agreements that read:

> BACKGROUND: D. You have had an adequate opportunity to be thoroughly advised of the provisions of this Agreement and have had sufficient time and opportunity to evaluate and investigate the TOTAL HOCKEY system and the procedures and financial requirements associated with this system as well as the competitive market in which it operates.

---

[5] Rob Talafous also moves to dismiss Counts IV and V as asserted against him. In addition to joining the reasons stated in the other defendants' motions to dismiss, Rob Talafous asserts that two of the alleged misrepresentations attributed to him—that Comeau could profitably operate the facility without a strong hockey background and that Total Hockey had a proven and profitable business model—are not actionable because they are either opinions or true statements. In addition, Rob Talafous asserts that the Projection Worksheet does not constitute a misrepresentation because it is not factual, but instead contained only examples.

Similarly, Dean Talafous adds that the alleged misrepresentations relating to Comeau's lack of hockey experience is not actionable because it is a statement of opinion and that the alleged omissions regarding the location or operation of the hockey facility are business judgments and opinions. In addition, Dean Talafous asserts that alleged statements that existing Total Hockey facilities were profitable do not constitute intentional misrepresentations under the FFA because they related to other hockey locations, had nothing to do with Plaintiffs' prospects for success, and there is no allegation that Dean Talafous knew any such statement was untrue.

. . .

6.A.　<u>Facilities</u>.  You are responsible for purchasing or leasing a site that meets our site selection criteria.  Our approval of the location (or construction) of your site does not constitute a representation, a guaranty or warranty, express or implied, assurance or endorsement of the successful operation, profitability, safety and/or legal compliance of the Training Center operated at such location, and you alone are responsible for site selection and the ultimate operation and success of the Training Center.

. . .

16E.　<u>Integration /Waiver</u> . . . This Agreement, together with its Appendices constitute the entire agreement between the parties regarding the subject matter of this Agreement and embody and supersede all prior agreements and negotiations regarding this subject matter.  . . . All of the representations and warranties of each party regarding the subject matter of this Agreement are set forth in this Agreement.  You acknowledge and agree that you have not received any warranty or guarantee, express or implied, as to the potential volume, profits or success of your business.  Each party acknowledges and agrees that it has not been induced to enter into this Agreement by, and has not in any way relied upon, any representation or warranty, written or oral, express or implied, of the other party except as expressly stated in this Agreement.

(First Am. Compl. ¶ 30, Exs. D & E.)  Total Hockey also relies on the language of the UFOC and the franchise questionnaire that are discussed above in the background section.

Under Florida law, "justifiable reliance" is a necessary element of both fraud and negligent misrepresentation claims.  *See Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 607 F.3d 742, 747 (11th Cir. 2010) (applying Florida law); *Rose v. ADT*

*Serv's, Inc.*, 989 So.2d 1244, 1247 (Fla. Dist. Ct. App. 2008).[6] While the Court acknowledges that the agreements between the parties, which contain both disclaimer and integration clauses, present compelling evidence that could refute the reasonableness of Plaintiffs' reliance on the alleged misrepresentations, the Court concludes that this issue is inappropriate for resolution on a motion to dismiss. This case is still at an early stage of litigation, and the parties are entitled to conduct discovery and submit the issue to the Court again, if warranted, on a motion for summary judgment.[7] Accordingly, the Court denies the pending motions to dismiss as to Counts IV and V of Plaintiffs' First Amended Complaint.[8]

## IV.    Florida Franchise Act

In Count III of the First Amended Complaint, Plaintiffs allege that Defendants have violated the FFA. Defendants assert that this claim, like Plaintiffs' fraud and misrepresentation claims, should be dismissed for lack of reasonable or justifiable reliance. Plaintiffs claim that they need only prove actual reliance under the FFA. For purposes of this motion, the Court need not decide the issue of whether reasonable

---

[6]    The parties agree that Florida law applies to Plaintiffs' fraud and negligent misrepresentation claims.

[7]    In so holding, the Court recognizes that a Court can determine the issue of justifiable reliance as a matter of law. However, the Court has not been presented with sufficient grounds for doing so on the facts of this case on a motion to dismiss.

[8]    For similar reasons, the Court declines to dismiss the claims as asserted against Rob and Dean Talafous. Plaintiffs have alleged enough facts to state a plausible claim for relief on their fraud and misrepresentation claims against both Rob and Dean Talafous.

reliance is an element of Plaintiffs' claims under the FFA. Even assuming that it is, the Court declines to dismiss Plaintiffs' claim for the reasons discussed above with respect to Plaintiffs' fraud and misrepresentation claims.

## V.      Claims against Individual Defendants

Total Hockey argues that Counts III, IV, and V, as asserted against individual defendants Ing, McKinney, and Salvador, must be dismissed because Plaintiffs have not alleged that any of them personally committed material, tortious acts. Further, Total Hockey asserts that under Florida law, officers and agents of a business are not liable for corporate acts simply by reason of their relationship to the business. *See, e.g.*, *E & A Produce Corp. v. Olmo*, 864 So.2d 447, 448 (Fla. Dist. Ct. App. 2003). Similarly, Dean and Rob Talafous each argue that they are not liable for Total Hockey's corporate acts.

### 1.      Peter Ing and Bryce Salvador

Plaintiffs allege that Peter Ing is the CEO of Total Hockey Worldwide, but they do not otherwise allege that Ing made any false representations. Plaintiffs also allege that Bryce Salvador is the Vice President of Total Hockey Worldwide and that "[a]pproximately a month after purchasing the franchises . . . Bryce Salvador echoed . . . that as long as Comeau followed Total Hockey's procedures, he would succeed and be profitable." (First Am. Compl. ¶ 31.) Plaintiffs have not alleged any representations by Ing or Salvador that were made prior to Plaintiffs' purchase of the franchises. Indeed, Plaintiffs acknowledge that they have not made any allegations against Ing regarding his actions "when selling or establishing" Plaintiffs' franchise.

Nonetheless, Plaintiffs argue that Ing and Salvador can be liable under the FFA

for executing or carrying out a scheme which violates any provision of the FFA, even if

Ing and Salvador did not make any false representations during the course of selling or

establishing a franchise. The Court disagrees. In support, Plaintiffs cite to Fla. Stat.

§ 817.416(2)(b), which reads:

> (b) The execution or carrying out of a scheme, plan, or corporate
> organization which violates any of the provisions of this section, if
> knowledge or intent be proved, shall be a misdemeanor of the second
> degree, punishable as provided in ss. 775.082 and 775.083.

(Fla. Stat. § 817.416(2)(b).) However, that section is qualified by Fla. Stat.

§ 817.416(2)(a), which sets forth the activities prohibited under the FFA:

> (2) Declarations.--
>
> (a) It is unlawful, **when selling or establishing** a franchise or
> distributorship, for any person:
>
>> 1. Intentionally to misrepresent the prospects or chances for success
>> of a proposed or existing franchise or distributorship;
>>
>> 2. Intentionally to misrepresent, by failure to disclose or otherwise,
>> the known required total investment for such franchise or
>> distributorship; or
>>
>> 3. Intentionally to misrepresent or fail to disclose efforts to sell or
>> establish more franchises or distributorships than is reasonable to
>> expect the market or market area for the particular franchise or
>> distributorship to sustain.

(Fla. Stat. § 817.416(2)(a) (emphasis added).) Having failed to allege any

representations by Ing or Salvador that were made "when selling or establishing a

franchise," Plaintiffs have failed to state a claim against these defendants personally for fraud, misrepresentation, or a violation of the FFA violation.[9]  Therefore, Ing and Salvador are dismissed as defendants in this action.

### 2.  Dean Talafous, Rob Talafous, and Brian McKinney

Plaintiffs have, however, alleged specific representations made by Dean Talafous, Rob Talafous, and Brian McKinney that were made before Plaintiffs purchased the Total Hockey franchises.  For example, Plaintiffs allege that Dean Talafous, Rob Talafous, and Brian McKinney each told Comeau that all of the Total Hockey facilities were successful and profitable (First Am. Compl. ¶ 22); that Dean Talafous told Comeau that he had generated $175,000 in revenue through summer camp registrations alone (*id*. ¶ 23); that Rob Talafous told Comeau that he need only hire someone with a hockey background to be profitable (*id*. ¶ 18) and that Total Hockey had a proven and profitable business model (*id*. ¶20).  Further, Plaintiffs allege that Rob Talafous provided Plaintiffs with the misleading financial projection.  (*Id*. ¶ 18.)

The Court concludes Plaintiffs have alleged sufficient facts in their First Amended Complaint to maintain fraud, misrepresentation, and FFA claims against Dean Talafous, Rob Talafous, and Brian McKinney.

---

[9]      Ing also argues that claims against him should be dismissed because he was not properly served.  Because the Court has dismissed Ing as a defendant on other grounds, the Court declines to rule on this issue.

## VI.    Breach of Contract

In Count VI of the First Amended Complaint, Plaintiffs allege that Total Hockey's actions constitute a breach of contract and/or a violation of the implied covenant of good faith and fair dealing. To state a claim for a breach of contract, Plaintiffs must allege (1) a valid contract; (2) a material breach; and (3) damages. *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (applying Florida law).

In support of this claim, Plaintiffs assert that Defendants had contractual obligations under Paragraphs 7.F and 8.E of the Franchise Agreements that they failed to meet. For example, Plaintiffs allege that Total Hockey was obligated to provide ongoing suggestions and recommendations under Paragraph 7.F and to provide assistance for unusual operating problems under Paragraph 8.E.

The relevant provisions read:

[7.F] <u>Operating Procedures</u>. In many instances, we will provide ongoing suggestions and recommendations regarding your business and the operation of the Training Center through our Training Manual and other written materials relating to the training sessions. You must, as we require, adopt and use as your continuing operations the required standards, service style, procedures, techniques and management systems described in our Business Operations Manual or other written materials relation to the Products, financial management, equipment, and facility standards. We will revise the Manual and these standards, procedures, techniques and management systems periodically to meet changing conditions in the best interest of the System.

[8.E] <u>Special Assistance</u>. If you have some unusual or unique operating problems or if you have a specific situation in which you require assistance, you may request from us to provide you assistance to deal with the problem or situation. If we agree to provide you the assistance, we will charge you

our then-current consulting fee plus you must reimburse us for all expenses
we incur in providing you such assistance.

(First Am. Compl. ¶ 30, Exs. D &E at 7.F and 8.E.)

A careful reading of Paragraphs 7.F and 8.E reveals no affirmative contractual obligations to be met by Total Hockey. Paragraph 7.F provides that "in many instances [Total Hockey] will provide suggestions and recommendations regarding" the operation of Plaintiffs' training centers, but it does not impose an affirmative obligation to do so. In fact, Paragraph 7.F actually places an obligation on Plaintiffs, as required by Total Hockey, to use certain standards and procedures.

Similarly, nothing in Paragraph 8.E imposes an affirmative obligation on Total Hockey. Instead, Paragraph 8.E provides that *if* Plaintiffs have some unusual or unique operating problems or a specific situation that requires assistance, Plaintiffs *may request* assistance from Total Hockey. Paragraph 8.E further provides that *if* Total Hockey agrees to provide assistance, certain charges will apply. Again, there is no affirmative contractual obligation owed by Total Hockey in this paragraph.

Having failed to allege a specific contractual obligation that Total Hockey owed Plaintiffs, Plaintiffs' breach of contract claim fails to state a claim. Further, because Plaintiffs have not stated a viable claim for breach of contract, Plaintiffs cannot maintain a claim for breach of the implied covenant of good faith and fair dealing. *Burger King Corp. v. C.R. Weaver*, 169 F.3d 1310, 1316-1318 (11th Cir. 1999) (holding that there is no independent cause of action under Florida law for breach of the implied covenant of good faith and fair dealing; explaining that a breach of the implied covenant cannot be

maintained in the absence of breach of an express contract provision); *Ins. Concepts and Design, Inc. v. Healthplan Servs., Inc.*, 785 So.2d 1232, 1234 (Fl. Dist. Ct. App. 2001). The Court therefore dismisses Count VI.

## VII.   Comeau's Standing

Defendants contend that Comeau lacks standing to assert claims against the Defendants and must therefore be dismissed.  In support, Defendants cite to Florida's "shareholder standing rule."  That rule provides that when the injury is to the corporation and not the stockholder, "a stockholder cannot maintain an action in his own name but must bring it in the name of the corporation."  *See Lincoln Oldsmobile, Inc. v. Branch*, 574 So.2d 1111, 1114 (Fla. Dist. Ct. App. 1990).

Plaintiffs argue that dismissal of Comeau's claims would be inappropriate because it cannot be determined yet, without further discovery, if Comeau has suffered an injury separate from those suffered by HEI.  Further, with respect to his FFA and MFA claims, Comeau asserts that he is a *de facto* franchisee because he signed a broadly worded guaranty.

First, the Court concludes that Comeau has failed to state a plausible claim that he has suffered damages that are separate from those suffered by HEI.  Notably, Comeau has not pointed to any allegations in the First Amended Complaint alleging that he suffered any damages individually.  Second, Plaintiffs have not cited to any law in support of that proposition that Comeau, as a shareholder of HEI and a guarantor for each of the Franchise Agreements, is a *de facto* franchisee.  On the other hand, Defendants have cited to *Checkers Drive-In Rests., Inc. v. Tampa Checkmate Food*

*Servs., Inc.*, 805 So.2d 941, 943-44 (Fla. Dist. Ct. App. 2001) (holding that the sole shareholder of a franchise who signed a guaranty did not have standing to recover his investment in the franchise). Given this, the Court concludes that it is appropriate to dismiss Comeau as a plaintiff without prejudice.

## CONCLUSION

While the Court's Order allows a significant portion of Plaintiffs' First Amended Complaint to move forward, the Court cautions Plaintiffs that a victory at this early stage of the litigation does not necessarily equate to a victory at the summary judgment stage. In its preliminary review of the record, it appears that without significant developments during discovery, Plaintiffs' claims are at risk of failing in a future round of dispositive motions.

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1.      Total Hockey Defendants' Motion to Dismiss (Doc. No. [13]), Rob Talafous' Motion to Dismiss (Doc. No. [20]), and Dean Talafous' Motion to Dismiss (Doc. No. [32]) are **GRANTED IN PART** and **DENIED IN PART** as follows:

      a.      Counts I, II, and VI are **DISMISSED WITH PREJUDICE**.

      b.      Plaintiff Mathieu Comeau is **DISMISSED WITHOUT PREJUDICE** as a party to this action.

> c.   Defendants Peter Ing and Bryce Salvador are **DISMISSED**

**WITH PREJUDICE** as parties to this action.

Dated:  January 10, 2011                    s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            United States District Judge